**The STATE of Ohio, Appellee,**

**v.**

**SOKE, Appellant.**

[Cite as *State v. Soke* (1989), 65 Ohio App.3d 590.]

Court of Appeals of Ohio,
Geauga County.

No. 1464.

Decided Dec. 12, 1989.

*David P. Joyce,* Prosecuting Attorney, for appellee.

*Kenneth R. Callahan, Jr.,* County Public Defender, for appellant.

CHRISTLEY, Presiding Judge.

On February 11, 1988, in the Geauga County Common Pleas Court, a jury found appellant, Theodore Soke, guilty of kidnapping, rape, and possession of weapons while under disability, each with a firearm specification.

The convictions resulted from an incident which occurred on November 18, 1988, when appellant abducted his estranged common-law wife at gunpoint from the laundry room of her apartment complex and led her back to her apartment where he raped her while the gun was on a nearby dresser.

Appellant was sentenced on May 5, 1988 and the judgment of conviction was filed on May 10, 1988. On June 1, 1988, appellant timely filed a notice of appeal and assigned the following as error.

"1. The appellant was denied a fair trial when the state was repeatedly permitted to admit instances of prior but irrelevant bad conduct of the accused.

"2. The trial court committed prejudicial error in allowing testimony of prior instances of drug and/or alcohol abuse without a proper foundation having been established.

"3. The trial court prejudicially erred in determining there was sufficient evidence to support a finding of operability of any alleged firearm as required.

"4. The appellant's conviction of rape was against the manifest weight of the evidence.

"5. The trial court erred in failing to quash the indictment below and remand the matter to the grand jury in finding that said indictment was not defectively vague pursuant to O.R.C. 2941.11."

■ In his first assignment of error, appellant argues that the court erred by permitting the state to introduce evidence of his prior bad conduct. This assignment is not well taken. The state introduced evidence that appellant used drugs, spent time in jail, intended to go over to the victim's house with a gun on a night sometime subsequent to the rape, frequented taverns, had a bad attitude, and was a "real creep." Appellant also complains about the evidence of unexplained bruises on the victim. However, appellant was not identified as the source of these bruises, although there was a strong inference that appellant was the source because of other evidence that appellant had physically abused the victim.

Before the introduction of this disputed testimony, appellant's counsel moved the court to limit it. However, the court ruled that the state could introduce the testimony for the "limited purpose of demonstrating utilization

of force in a pattern of conduct which is consistent with the utilization of force as it applies as an element of the charge of rape * * *."

The state argued that this evidence was not elicited to prove appellant's bad character, but to explain the *victim's* conduct, *i.e.*, to show that she legitimately feared appellant on the night of the rape and to explain why she offered only minimal resistance and why she voluntarily consented to sexual activity with appellant only months after the rape. The theme of appellant's defense was consent and the state argued that the disputed evidence was necessary to show a pattern of violence in the marital relationship with the victim repeatedly returning to appellant after having been abused by him. This court notes that similar issues concerning the exclusivity of Evid.R. 404(B) were before this court in *State v. Kirklin* (June 16, 1989), Portage App. No. 1961, unreported, 1989 WL 65437.

The state also introduced evidence of appellant's acts of violence in order to prove that appellant was under the disability of being a chronic alcoholic when he used a gun on the night of the rape. The state introduced evidence tending to show a correlation between appellant's violent behavior and his use of alcohol.

R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Evid.R. 404(B) provides:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

In *Kent v. Kirkland* (Apr. 14, 1989), Portage App. No. 1941, unreported, 1989 WL 36277, this court held:

"In interpreting the latter, the Supreme Court has held that the statute must be strictly construed against the state. *State v. Burson* (1974), 38 Ohio St.2d 157 [67 O.O.2d 174, 311 N.E.2d 526]. Accordingly, evidence of crimes or other acts is admissible only when it is relevant to one of the matters listed in

the statute, such as motive or intent. *State v. Thompson* (1981), 66 Ohio St.2d 496 [22 O.O.3d 411, 422 N.E.2d 855].

"The staff note to Evid.R. 404(B) states that the list in the rule is not exclusive. Some courts have interpreted this language to mean that this type of evidence is admissible 'if it is relevant under Evid.R. 401 and not excluded under Evid.R. 403.' *State v. Wilson* (1982), 8 Ohio App.3d 216, 219 [8 OBR 288, 290, 456 N.E.2d 1287, 1290]. In *State v. DeMarco* (1987), 31 Ohio St.3d 191 [31 OBR 390, 509 N.E.2d 1256], though, the court held that the same analysis that applied to the statute also applied to the rule." *Id.* at 7–8.

In *State v. Broom* (1988), 40 Ohio St.3d 277, 281–282, 533 N.E.2d 682, 689–690, the court held:

*"Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict.* State v. Burson *(1974), 38 Ohio St.2d 157, 158–159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 528;* State v. DeMarco *(1987), 31 Ohio St.3d 191, 194, 31 OBR 390, 392, 509 N.E.2d 1256, 1259. Neither the rule nor the statute contains the words 'like' or 'similar.' The rule and statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact 'tend to show' by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible.* State v. Flonnory *(1972), 31 Ohio St.2d 124, 126, 60 O.O.2d 95, 96–97, 285 N.E.2d 726, 729."* (Emphasis added.)

In this case, the disputed evidence does fit into one of the permitted uses under Evid.R. 404(B) or R.C. 2945.59 even *if* this court interprets the rule as being exclusive. This evidence shows a plan or scheme of intimidation as well as a motive, *i.e.*, the sexual subjugation of the victim. Similar evidence was permitted for similar reasons in *State v. Canitia* (Jan. 19, 1984), Cuyahoga App. No. 46946, unreported, 1984 WL 14176.

■ In his second assignment of error, appellant argues that the court erred in allowing testimony of prior instances of appellant's drug and/or alcohol abuse without a proper foundation. This assignment is well taken. In its brief, the state admits that it thought it did not need to produce expert testimony to consider the question of whether or not appellant was an alcoholic. At one point, the state did try to qualify a witness as an expert;

however, it was unsuccessful and the witness was not permitted to give her opinion as to whether or not appellant was an alcoholic.

Appellant was convicted of having weapons while under disability, *i.e.*, chronic alcoholism. R.C. 2923.13 provides:

"(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"* * *

"(4) Such person is drug dependent or in danger of drug dependence, or is a chronic alcoholic."

R.C. 3720.01 provides:

"As used in sections 3720.01 to 3720.05, inclusive, of the Revised Code:

"(A) 'Alcoholism' means the chronic and habitual use of alcoholic beverages by an individual to the extent that he has lost the power of self-control with respect to the use of such beverages or to the extent that he endangers the health, safety, or welfare of himself or others.

"(B) 'Alcoholic' means a person suffering from alcoholism."

Thus, the state had the burden to prove that appellant was a chronic alcoholic.

In support of his arguments, appellant cites *Connecticut Gen. Life Ins. Co. v. Dept. of Industry, Labor & Human Relations* (1979), 86 Wis.2d 393, 407, 273 N.W.2d 206, 212–213, wherein the court held that "[a]lcoholism is a disease. Its diagnosis is a matter of expert medical opinion proved by a physician and not by a layman." *Connecticut* involved a discriminatory discharge because of a handicap. Appellant also cites *Bolan v. Adams* (1984), 19 OBR 349, 19 Ohio App.3d 206, 483 N.E.2d 1187. However, *Bolan* involves evidence of *habit* and is not relevant here.

Ohio courts also recognize that alcoholism is a disease. See *Columbus Bar Assn. v. Gill* (1988), 39 Ohio St.3d 4, 528 N.E.2d 945, which involves attorney suspension and monitoring and supervision for alcoholism and drug addiction.

The state argues that since none of its witnesses was an expert, it was not necessary to lay a foundation prior to their testimony. It is true that a nonexpert witness may give his opinion as to whether a person was in a state of intoxication. 43 Ohio Jurisprudence 3d (1983) 601, Evidence and Witnesses, Section 684. However, since alcoholism is a disease, its existence should be established by expert medical testimony. This the state failed to do. Thus,

appellant's conviction for having a weapon while under a disability must be reversed.

■ In his third assignment of error, appellant argues that the court erred when it failed to dismiss the firearm specifications because the state failed to prove that appellant's gun was operable as required by R.C. 2923.11(B). This assignment is well taken.

R.C. 2923.11 provides:

"(A) 'Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.

"(B) 'Firearm' means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. 'Firearm' includes an unloaded firearm, and any firearm which is inoperable but which can readily be rendered operable."

Following *State v. Gaines* (1989), 46 Ohio St.3d 65, 545 N.E.2d 68, it is now required that the state must prove beyond a reasonable doubt that the firearm was operable or could readily have been rendered operable at the time of the offense in order to impose an additional term of three years' actual incarceration on a firearm specification under R.C. 2923.11(B) and 2929.71(A). Essentially, *Gaines* pointed out that the terms firearm and deadly weapon are not interchangeable under the code, and that "firearm" requires a more specific showing than does "deadly weapon." It must be shown that the firearm is capable of expelling a projectile.

In this case, the gun was never recovered. The victim testified that appellant had threatened her with a gun during the abduction and rape. Appellant had admitted to his son that he had abducted the victim at gunpoint, and a police officer who was investigating the crime listened in to a telephone conversation between appellant and the victim wherein appellant admitted having the gun.

■ Nevertheless, following *Gaines, supra,* we must reverse only on the issue of the firearm specification. However, for purposes of the rape conviction, it is not necessary for the element of "force" to be a firearm capable of firing a projectile.

In his fourth assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. This assignment is well taken only in part. In *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus, the court held:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

As discussed in the first and second assignments, there was sufficient evidence to convict on the rape charge but not on the charge of having weapons while under a disability.

■ Appellant makes much of the fact that the victim referred to the non-consensual sexual intercourse as "making love." However, it should be of no import that the victim described the incident as such, since it was established that the intercourse was non-consensual and in fact had occurred while appellant was threatening the victim with a gun.

■ Appellant also makes much of the fact that the victim had consensual sex with appellant subsequent to the rape. However, this does not prove that the victim consented to the act in question.

In his fifth assignment of error, appellant argues that the indictment should have been quashed because the specification alleging prior conviction was defectively vague. However, this assignment is not well taken because, as appellee points out in its brief, the court did not sentence on this specification. The only specification on which the court sentenced was the firearm specification.

The judgment of the trial court is therefore reversed as to the issue of the firearm specification and the issue of possessing a firearm while under a disability of chronic alcoholism; it is affirmed in all other respects.

*Judgment accordingly.*

JOSEPH E. MAHONEY and FORD, JJ., concur.