The STATE of Ohio, Appellee,

v.

SEMENCHUK, Appellant.

[Cite as *State v. Semenchuk* (1997), 122 Ohio App.3d 30.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70084.

Decided July 24, 1997.

**34**

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, *Mark J. Mahoney*, Assistant Prosecuting Attorney, for appellee.

*Paul Mancino, Jr.*, for appellant.

TIMOTHY E. MCMONAGLE, Judge.

Defendant-appellant, George Semenchuk, appeals his convictions for having a weapon under disability and for failure to comply with an order or signal of a police officer. For the reasons that follow, we reverse appellant's conviction for having a weapon while under the disability of chronic alcoholism and affirm the failure-to-comply conviction.

The facts relevant to this appeal reveal that during the early morning hours of February 18, 1995, Patrolman Jeffrey Gezymalla responded to a call for assis-

tance at Sneaky Pete's Bar in Seven Hills. Upon arriving at the bar, Ptl. Gezymalla was advised that a vehicle, after striking another vehicle in the parking lot, had just left the bar and was traveling north on Broadview Road in a reckless manner. Shortly thereafter, the defendant's vehicle was observed weaving over four lanes of the five-lane highway, often being in the southbound lanes while traveling north. After following the defendant for approximately one-half mile, the patrolman activated his siren and overhead lights, but the defendant failed to stop. Because of this, Ptl. Gezymalla testified that he maneuvered in front of the defendant's vehicle in order to force its stop.

After approaching the vehicle, Ptl. Gezymalla testified that defendant was loud and abusive and smelled of alcohol. The defendant was unable to perform any field sobriety tests and was subsequently arrested. He eventually passed out while in the back seat of the officer's patrol car. A female passenger in the car, identified as Dena Kozlowski, also appeared intoxicated. Because she appeared to be in no condition to operate the vehicle, Ptl. Gezymalla decided that the car should be towed.

During an inventory search prior to towing, the officer observed in plain view a hammer and trigger guard of what was thought to be a weapon. The weapon was later identified as a Marlin rifle that was unloaded but operable. The record reveals that the defendant was arrested and received several traffic citations that were disposed of in the Parma Municipal Court and are not the subject of this appeal.

The defendant was eventually indicted in the Cuyahoga County Court of Common Pleas on a single count of carrying a concealed weapon. A plea agreement was rejected by the defendant, and he was subsequently reindicted for having a weapon under disability in violation of R.C. 2923.13, carrying a concealed weapon in violation of R.C. 2923.12, and failure to comply with an order or signal of a police officer in violation of R.C. 2921.331. The failure-to-comply charge contained a degree-enhancing clause charging causing a substantial risk of serious physical harm.

The defendant filed a motion to dismiss the second indictment and a motion to suppress the evidence obtained as a result of the stop of defendant's vehicle. The motion to dismiss was granted in part for being time-barred, as it pertained to the carrying-a-concealed-weapon charge but was otherwise denied. The motion to suppress was denied. Trial proceeded on the charges of having a weapon under disability and failure to comply. The jury returned a verdict of guilty on both charges, and the defendant was sentenced to concurrent one-year terms of imprisonment. A motion for an appeal bond was denied by the trial court, as was a motion for release pending appeal by this court.

The defendant timely appeals, assigning thirteen errors for our review.[1]

## I

In his first assignment of error, defendant-appellant argues that the bill of particulars filed by the prosecution merely reiterated the allegations contained in the indictment and therefore failed to apprise him of the nature and cause of the charges against him. Specifically, appellant maintains that he is entitled to know what constitutes being "drug dependent" or a "chronic alcoholic" under R.C. 2923.13(A)(4).

The purpose of a bill of particulars is to provide to the accused greater detail of the nature of the offense charged.[2] Whether the bill of particulars provides such detail, however, is a matter within the sound discretion of the trial court.[3] Consequently, a decision of a trial court finding that a bill of particulars sufficiently apprises a defendant of the charges against him or her will not be reversed on appeal absent an abuse of discretion. An abuse of discretion is more than an error of law or judgment; "it implies that the court's attitude is unreasonable, arbitrary or unconscionable."[4]

In this case, the indictment stated that appellant "unlawfully and knowingly acquired, had, carried, or used a firearm or dangerous ordnance while being a drug dependant or in danger of drug dependence, or being a chronic alcoholic." The bill of particulars repeated this language, prefaced by the date, time, location and name of appellant. Appellant complains that this is insufficient, as he is entitled to know the specific facts that constitute being drug dependent or being a chronic alcoholic.

To the contrary, only specific information going to the essential elements of the charge must be revealed in a requested bill of particulars.[5] In this case, appellant was indicted for having a weapon while under disability, the disability being drug dependence or chronic alcoholism. This, in itself, specified the nature of the offense charged, which the bill of particulars substantiated. What appel-

---

1. See Appendix.

2. *State v. Chaffin* (1972), 30 Ohio St.2d 13, 59 O.O.2d 51, 282 N.E.2d 46, paragraph one of the syllabus.

3. *State v. Lewis* (1993), 85 Ohio App.3d 29, 32, 619 N.E.2d 57, 58–59.

4. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142.

5. *State v. Sellards* (1985), 17 Ohio St.3d 169, 171, 17 OBR 410, 411–412, 478 N.E.2d 781, 784; *State v. Webb* (1991), 72 Ohio App.3d 749, 752, 596 N.E.2d 489, 490–491.

lant seeks to have the state disclose is evidence that supports an element of the charge—namely, drug dependence or chronic alcoholism. This they are not required to do.[6] Consequently, the trial court did not abuse its discretion in denying appellant's motion to dismiss count one of the indictment.

Appellant's first assignment of error is overruled.

## II

In his second assignment of error, appellant argues that the state acted vindictively when it sought reindictment on heightened felony charges because he refused to plead guilty to the original indictment for carrying a concealed weapon. The state contends that it sought the heightened charges only after it obtained additional information regarding appellant's criminal history.

In support of his argument, appellant relies on *Thigpen v. Roberts*[7] for the proposition that a prosecutor acts vindictively when seeking to reindict a convicted misdemeanant on a felony charge. The defendant in *Thigpen* was convicted of four misdemeanors associated with a truck/automobile collision wherein a passenger died. During the pendency of an appeal based on these convictions, a grand jury returned a felony indictment for manslaughter, for which he was duly convicted and sentenced accordingly. Relying on *Blackledge v. Perry*,[8] the court reasoned that the sequence of events strongly suggested that the prosecutor retaliated in response to the defendant's exercise of his right to appeal.

We find that *Thigpen* is not dispositive of this case. Ordinarily, due process is denied when a person is punished because he has done what the law plainly allows him to do.[9] In such a case, a presumption of vindictiveness arises that can be overcome only by factual data supporting the legitimacy of the increased sentence.[10] This is not the situation here.

Instead, this case more closely resembles *Bordenkircher v. Hayes.*[11] In that case, the defendant refused to plead guilty to a felony charge of uttering a forged instrument, a crime punishable by a prison term of two to ten years,

---

**6.** *Sellards*, 17 Ohio St.3d at 171, 17 OBR at 411–412, 478 N.E.2d at 784; *Chaffin*, 30 Ohio St.2d at 15, 59 O.O.2d at 52, 282 N.E.2d at 48.

**7.** *Thigpen v. Roberts* (1984), 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23.

**8.** *Blackledge v. Perry* (1974), 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628.

**9.** *North Carolina v. Pearce* (1969), 395 U.S. 711, 738, 89 S.Ct. 2072, 2082, 23 L.Ed.2d 656, 676–677 (Black, J., concurring in part and dissenting in part).

**10.** *Id.* at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670.

**11.** *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604.

despite threats by the prosecutor that he would seek reindictment under a recidivist statute that would subject the defendant to a mandatory life sentence. When the defendant refused to plead guilty, the prosecutor carried out his threat and, upon a finding of guilty, the defendant was sentenced accordingly. Finding no vindictiveness on the part of the prosecution, the court reasoned that the defendant was plainly subject to prosecution under the recidivist statute and, in an effort to encourage the plea negotiation process, the prosecutor's actions in attempting to obtain a guilty plea were constitutionally legitimate.[12] As long as a prosecutor has probable cause to believe that an accused committed an offense, the decision whether or not to prosecute and on what charges is completely within the prosecutor's discretion.[13] Thus, in a pretrial setting, a prosecutor is free to seek indictment on whatever charges the evidence can support, and no presumption of vindictiveness will attach if the defendant was clearly subject to those charges at the outset.[14] Consequently, a pretrial decision altering the charges is less likely to be improperly motivated than a change in the charges made after an initial trial.[15]

The same is true in this case. Appellant was clearly subject to prosecution for the heightened charges at the time the plea negotiations broke down. Consequently, it cannot be said that the prosecutor acted vindictively in seeking those additional charges.

■ Appellant alternatively argues that his prosecution in common pleas court is in violation of a plea agreement reached in the Parma Municipal Court. In essence, appellant argues that he cannot be charged for additional automobile operational offenses in common pleas court when he was already charged, convicted, and sentenced for other charges arising from this incident in the municipal court. This argument is without merit.

Appellant was originally charged in the municipal court with five driving offenses.[16] Three of the five charges were dismissed after appellant pled guilty to driving under the influence and driving under suspension. He now claims that to be indicted for the failure-to-comply charge, another operating offense, contravenes the plea agreement reached in the municipal court, which was to dispose of

---

12. *Id.* at 364, 98 S.Ct. at 668–669, 54 L.Ed.2d at 611.

13. *United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74.

14. *Id.*

15. See *State v. Wilson* (1988), 47 Ohio App.3d 136, 139, 547 N.E.2d 1185, 1187.

16. These included (1) weaving, in violation of R.C. 4511.25; (2) operating under the influence of alcohol, in violation of R.C. 4511.19; (3) driving under suspension, in violation of R.C. 4511.192; (4) leaving the scene of an accident; and (5) operating left of center.

all the operational charges stemming from this incident. Without much analysis or discussion, appellant further contends that the charges of having a weapon under disability and carrying a concealed weapon likewise were in violation of the plea bargain.

In order to determine whether a subsequent prosecution is barred by the Double Jeopardy Clause of the Fifth Amendment, the offenses must have identical statutory elements or one must be a lesser included offense of the other.[17] None of the offenses for which appellant was charged in municipal court contains identical elements, nor are they lesser included offenses of those charged in common pleas court.

Appellant's second assignment of error is overruled.

## III

In his third assignment of error, appellant argues that the inventory search of his car was unconstitutional because it was merely a pretext for an investigatory search. Specifically, he maintains that there was no evidence produced substantiating that the search was made pursuant to any written standardized police procedure.

An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of the Fourth Amendment to the United States Constitution.[18] The exception derives from the threefold purpose of protecting the owner's property while in police custody, protecting the police from claims over lost or stolen property, and protecting the police from potential danger.[19] In order to be valid, however, the search must be conducted in accordance with standard police procedure and not as a subterfuge for an evidentiary search.[20]

In this case, the testimony adduced at trial revealed that appellant's vehicle was initially stopped because it reportedly had been involved in a hit-and-run accident and was being driven on the wrong side of the road. After failing field sobriety tests, appellant was placed under arrest. Ptl. Gezymalla further

17. *State v. Tolbert* (1991), 60 Ohio St.3d 89, 573 N.E.2d 617, paragraph one of the syllabus.

18. *Colorado v. Bertine* (1987), 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739, 745; *South Dakota v. Opperman* (1976), 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004.

19. *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005.

20. *Id.* at 376, 96 S.Ct. at 3100–3101, 49 L.Ed.2d at 1009; see, also, *State v. Hathman* (1992), 65 Ohio St.3d 403, 406, 604 N.E.2d 743, 745; *State v. Robinson* (1979), 58 Ohio St.2d 478, 480, 12 O.O.3d 394, 395–396, 391 N.E.2d 317, 318; *State v. Gordon* (1994), 95 Ohio App.3d 334, 337, 642 N.E.2d 440, 441–442.

testified that, according to standard police procedures, it is within the arresting officer's discretion whether or not to release a vehicle to someone other than the driver. Here, the only other person present was Kozlowski, who, according to the officer's testimony, was equally intoxicated and in no condition to operate the vehicle.

Appellant seems to presume that the validity of the inventory search hinges upon introducing written police policy evidencing that the arresting officer followed standard police procedure. The case law in this area does not support such a presumption. To the contrary, testimony to the effect that the officer was adhering to standard police procedures is sufficient.[21] Ptl. Gezymalla testified that he was following standard police procedure in deciding to tow the vehicle, as well as in conducting the inventory search. He further testified that the purpose of the search was not only for the protection of the owner of the vehicle but also for the protection of the police against claims of missing property. Nothing in the record supports that the stop was a pretext for an evidentiary search.

Additionally, appellant contends that the plain view doctrine requires that the rifle's incriminating character must have been immediately apparent before it could be lawfully seized under the Fourth Amendment. The United States Supreme Court, however, has made it clear that the scope of an inventory search is not restricted to items in plain view.[22] Consequently, whether the rifle was in plain view has no bearing on the lawfulness of the inventory search of appellant's car.

We find that the trial court properly denied appellant's motion to suppress. As long as the trial court's findings of fact are supported by competent, credible evidence, a reviewing court is bound to accept these findings as true and must then independently determine, as a matter of law, whether the trial court properly applied the substantive law to the facts of the case.[23] The record amply supports the state's position that the stop was not pretextual and that the subsequent inventory search was conducted in good faith, pursuant to standard police procedure.

Accordingly, appellant's third assignment of error is overruled.

---

21. See, e.g., Gordon, 95 Ohio App.3d at 339, 642 N.E.2d at 442–443.

22. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (court upheld admissibility of marijuana found in a glove compartment); see, also, State v. Otte (1996), 74 Ohio St.3d 555, 660 N.E.2d 711 (glove compartment); State v. Hathman (1992), 65 Ohio St.3d 403, 604 N.E.2d 743 (trunk); State v. Robinson (1979), 58 Ohio St.2d 478, 12 O.O.3d 394, 391 N.E.2d 317 (trunk); State v. Lesak (Sept. 28, 1995), Cuyahoga App. No. 68198, unreported, at 6, 1995 WL 572026 (center console).

23. See Gordon, 95 Ohio App.3d at 336, 642 N.E.2d at 440–441.

### IV

Assignments of Error Four, Five, and Eight will be addressed together because they relate to the propriety of admitting evidence at trial of appellant's prior citations and convictions for drunk driving and related offenses.

▮▮▮▮▮ As a general rule, evidence of a person's other criminal acts, crimes, or wrongs is inadmissible to prove a person's propensity to commit crime.[24] To be admissible, the evidence must be relevant to some issue of proof of guilt.[25] Notwithstanding, such evidence may be admissible if relevant for any purpose other than to show mere propensity or disposition on the accused's part to commit the crime, such as proof of an element of the crime charged.[26] The admission or exclusion of relevant evidence rests within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion.[27]

The state contends that the challenged evidence proves the element of chronic alcoholism under R.C. 2923.13(A), which provides:

"Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

"* * *

"(4) The person is drug dependent, in danger of drug dependence, or a chronic alcoholic."

Chronic alcoholism is not defined in the statute or, for that matter, anywhere in Title 29. The only definition of alcoholism in the Revised Code, although not controlling,[28] is in R.C. 3793.01(A) and provides:

"(1) 'Alcoholism' means the chronic and habitual use of alcoholic beverages by an individual to the extent that he no longer can control his use of alcohol or endangers the health, safety, or welfare of himself or others.

---

24. Evid.R. 404(B); *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682; see, also, *State v. Bobo* (1989), 65 Ohio App.3d 685, 692, 585 N.E.2d 429, 433–434.

25. *State v. Hector* (1969), 19 Ohio St.2d 167, 175, 48 O.O.2d 199, 204, 249 N.E.2d 912, 917.

26. *State v. Roe* (1989), 41 Ohio St.3d 18, 23–24, 535 N.E.2d 1351, 1359–1360; *State v. Watson* (1971), 28 Ohio St.2d 15, 21, 57 O.O.2d 95, 98, 275 N.E.2d 153, 157.

27. *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus.

28. See *State v. Tomlin* (1992), 63 Ohio St.3d 724, 726, 590 N.E.2d 1253, 1255.

"(2) 'Alcoholic' means a person suffering from alcoholism."

As noted by the Ohio Supreme Court in *Doyle v. Ohio Bur. of Motor Vehicles*,[29] "[t]here is * * * no precise, singular, all encompassing definition of 'alcoholism' which is appropriate in all situations or describes all persons who are alcoholic. An alcoholic is not susceptible [of] one definitive description." To the contrary, alcoholism is a disease which "reflects a collection of * * * behaviors that collectively make up as many alcoholics as there are alcohol abusers." [30]

▉ Thus, the issue becomes whether chronic alcoholism can be proven by evidence of past citations and convictions for or related to drunk driving. This issue was peripherally addressed in *State v. Tomlin*,[31] which sought resolution of whether expert *medical* testimony was required to prove that the accused was a chronic alcoholic under R.C. 2923.13(A)(4), the very statute at issue in this case. Finding that expert medical testimony was not essential in every case, the *Tomlin* court concluded that the trial court did not abuse its discretion in admitting the testimony of the state's expert witness, a clinical psychologist. The court reasoned that, because the term "chronic alcoholic" is incapable of an all-encompassing definition, this issue is best determined by the trier of fact. In disapproving *State v. Soke*,[32] the *Tomlin* court stated:

"Although alcoholism is a disease, its presence may be established in various ways. For example, alcoholism may be demonstrated by evidence of excessive work absences attributed to alcohol abuse, repeated citations for driving while under the influence of alcohol * * *, or prior criminal offenses directly attributed to alcohol abuse (within the parameters of Evid.R. 404[B] ). The trial court must decide on a case-by-case basis whether legally sufficient evidence has been presented by the state to establish the element of chronic alcoholism as provided in R.C. 2923.13(A)(4)."[33]

Notwithstanding, appellant argues that the state's Exhibits 9 and 10 do not meet the requirements of admissibility for a prior conviction under R.C. 2945.75(B), which provides:

---

29. *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 49, 554 N.E.2d 97, 100.

30. Vaillant, The Natural History of Alcoholism (Harv. Univ. Press 1983) 3; *Doyle, supra*, at 49–50, 554 N.E.2d at 100–101.

31. *Tomlin*, 63 Ohio St.3d 724, 590 N.E.2d 1253.

32. *State v. Soke* (1989), 65 Ohio App.3d 590, 584 N.E.2d 1273.

33. *Tomlin*, 63 Ohio St.3d at 727, 590 N.E.2d at 1256, fn. 1.

"Whenever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such a conviction."

To constitute a prior conviction, there must be a judgment of conviction as defined in Crim.R. 32(B).[34] Crim.R. 32(B) provides:

"A judgment of conviction shall set forth the plea, the verdict or findings, and the sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."

State's Exhibit 9 is a certified copy of a letter from the Parma Municipal Court containing journal entries related to appellant's 1990 and 1992 DUI convictions. Exhibit 10 is a certified copy of the Cleveland Municipal Court docket pertaining to appellant's 1993 DUI conviction. The state introduced these documents for the purpose of proving that appellant had been convicted of these offenses. It is evident that these exhibits, while clearly public records under Evid.R. 803(8) as ruled by the trial court, do not comport with the requirements of R.C. 2945.75(B) and Crim.R. 32(B) and should not have been admitted as evidence that appellant was convicted of the offenses for which he was charged.

Appellant also contends that the testimony and exhibits related to appellant's repeated citations for DUI and related offenses (Exhibits 2, 3, 4 and 6) were inadmissible. Subject to our discussion in the next section, evidence related to repeated citations may be admissible to assist in proving the element of chronic alcoholism.[35] Consequently, it was not error to admit evidence of appellant's repeated citations for DUI-related offenses.

The same is not true of Exhibits 5 and 8, which relate to appellant's refusal to take breath-alcohol tests in 1990 and 1992, respectively. These documents do nothing to prove the element of chronic alcoholism. While evidence of refusal to take a breath-alcohol test is admissible for purposes not relevant to this case,[36] these refusals are not relevant to the issue of whether

---

**34.** *State v. Henderson* (1979), 58 Ohio St.2d 171, 177–178, 12 O.O.3d 177, 180–181, 389 N.E.2d 494, 497–498.

**35.** See *Tomlin,* 63 Ohio St.3d at 727, 590 N.E.2d at 1256, fn. 1.

**36.** See *Maumee v. Anistik* (1994), 69 Ohio St.3d 339, 632 N.E.2d 497; *Lakewood v. Waselen-chuk* (1994), 94 Ohio App.3d 684, 641 N.E.2d 767.

appellant is a chronic alcoholic, and the trial court erred in admitting evidence of such.[37]

Accordingly, appellant's fourth and eighth assignments of error are sustained, and his fifth assignment of error is overruled.

V

In his sixth assignment of error, appellant contends that his conviction for having a weapon while under the disability of being a chronic alcoholic cannot be sustained where the element of chronic alcoholism was solely determined by evidence of past alcohol-related offenses.

Notwithstanding our decision that evidence of appellant's prior traffic citations for alcohol-related offenses is admissible to assist in establishing the element of chronic alcoholism, we are not persuaded that this evidence, alone, proves that appellant is a chronic alcoholic sufficient to sustain a conviction under R.C. 2923.13(A)(4). As discussed above, the *Tomlin* court held that expert medical testimony is not required to establish that an accused is a chronic alcoholic and, in dicta, stated that evidence of chronic alcoholism can be established in various other ways, including presenting evidence of prior alcohol-related citations or offenses. The *Tomlin* court did not limit the expert testimony to that of medical doctors as was done in *Soke* but permitted a clinical psychologist experienced in alcoholism to render an opinion whether the accused was a chronic alcoholic.

Despite approving the introduction of evidence of other alcohol-related offenses, the *Tomlin* court was not faced with the situation we have in this case, namely, whether an accused can be found to be a chronic alcoholic merely based on evidence of alcohol-related offenses. A fair reading of the *Tomlin* case does not permit such a broad interpretation. Consequently, we hold that, while evidence of prior alcohol-related offenses is admissible for the limited purpose of assisting in establishing proof of chronic alcoholism, such evidence in and of itself is legally insufficient to sustain a conviction under R.C. 2923.13(A)(4).

Because there was insufficient evidence to establish that appellant was a chronic alcoholic, his conviction for having a weapon while under the disability of chronic alcoholism cannot be sustained. Accordingly, appellant's sixth assignment of error is well taken, and appellant's conviction for this offense is hereby vacated.

---

37. See *State v. Hector,* 19 Ohio St.2d at 175, 48 O.O.2d at 204, 249 N.E.2d at 917; Evid.R. 402.

## VI

In his seventh assignment of error, appellant contends that he was denied a fair trial because of improper and prejudicial comments made by the prosecutor during closing argument. Specifically, appellant challenges several of the prosecutor's remarks related to the conviction of having a weapon while under disability, as well as the prosecutor's inquiry into what the jury's response would be in the event they perceived the flashing lights and siren of a police car.

The state is entitled to some latitude and freedom of expression during its closing argument. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 792–793. The test for prosecutorial misconduct during closing argument is whether the comments were improper and, if so, whether they prejudicially affected the accused's substantial rights. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318, 470 N.E.2d 883, 885; *State v. Landrum* (1990), 53 Ohio St.3d 107, 111, 559 N.E.2d 710, 717–718. To determine prejudice, the record must be reviewed in its entirety. *State v. Lott* (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293, 300–301.

As to those comments that pertain to appellant's conviction for having a weapon while under disability, we need not address whether the prosecutor's conduct was improper, because we vacated appellant's conviction as to that charge. See App.R. 12(A)(1)(c). As to the comment that pertains to the failure-to-comply charge, when the argument is viewed as a whole, we conclude that this isolated reference by the prosecutor as to what the jury would do under similar circumstances does not rise to the level of affecting appellant's substantial rights.

Accordingly, appellant's seventh assignment of error is moot in part and overruled in part.

## VII

Appellant's ninth and tenth assignments of errors likewise attack appellant's conviction for having a weapon while under disability of being a chronic alcoholic. Specifically, appellant claims in his ninth assignment of error that he was denied a fair trial when the trial court failed to give a proffered instruction on alcoholism. In his tenth assignment of error, appellant challenges the overruling of his motion for acquittal on the charge of having a weapon while under disability.

As above, because we vacate appellant's conviction for this offense, these assignments of error are now moot and need not be addressed by this court.[38]

---

**38.** See App.R. 12(A)(1)(c).

## VIII

In his eleventh assignment of error, appellant challenges the overruling of his motion for acquittal on the charge of failure to comply with an order or signal of an officer. Specifically, he argues that the prosecution failed to prove that appellant intentionally eluded a police officer or that there was a substantial risk of serious physical harm.

A motion for acquittal is governed by Crim.R. 29(A), which provides:

"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."

It is well established that an appellate court's function, when reviewing the sufficiency of the evidence to support a criminal conviction, is to examine the evidence submitted at trial to determine whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.[39] The weight and credibility of the evidence are left to the trier of fact.[40]

In count two of the indictment, appellant was charged with failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B). The indictment also contained a degree-enhancing clause charging creating a substantial risk of serious physical harm under R.C. 2921.331(C)(3). The statute provides:

"(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor vehicle to a stop.

"(C) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer. * * * A violation of division (B) of this section is a misdemeanor of the first degree, except that a violation of division (B) of this section is a felony of the fourth degree if the jury * * * finds any one of the following by proof beyond a reasonable doubt:

---

**39.** *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**40.** *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

"\* \* \*

"(3) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property."

Appellant argues that because there was no injury to persons or property, the evidence was insufficient to find that appellant created a substantial risk of serious physical harm. He claims that appellant rather uneventfully stopped his vehicle in response to the police officer's signal. We disagree.

A "substantial risk" is a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." [41] "Serious physical harm to persons" includes physical harm that carries a substantial risk of death, permanent incapacity, or substantial temporary incapacity.[42] "Serious physical harm to property" includes a substantial devaluation in property, a substantial interference with the enjoyment of property, or damage that requires a substantial amount of time, effort, or money to repair.[43]

Ample evidence exists from which a jury could find that appellant's driving created a strong possibility of serious physical harm. When viewed in a light most favorable to the prosecution, the evidence adduced at trial revealed that appellant was observed by Ptl. Gezymalla to be weaving through four lanes of a five-lane highway. Additionally, appellant was unable to stay on his side of the road and was traveling at approximately forty to fifty miles per hour in a thirty-five-mile-per-hour speed zone. Ptl. Gezymalla activated his overhead lights and siren after observing this driving behavior, and appellant failed to pull over. The officer radioed for assistance, alerting area officers that he was attempting to stop appellant's vehicle without success and to be cautious as they approached because appellant was observed driving on the wrong side of the road. Certainly, driving on the wrong side of the road in the opposite direction of traffic creates a strong possibility that serious physical harm to both persons and property may occur. Because appellant was fortunate enough not to actually cause harm is of no consequence. It is only the strong possibility that harm could occur that creates culpability under R.C. 2921.331(C)(3).[44]

---

41. R.C. 2901.01(H).

42. R.C. 2901.01(E).

43. R.C. 2901.01(F).

44. See *State v. Moore* (Jan. 28, 1993), Cuyahoga App. No. 61673, unreported, 1993 WL 19604 (speeding, weaving, and driving in opposite direction of traffic creates a substantial risk of serious physical harm).

Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.[45] Viewing the evidence adduced at trial in a light most favorable to the prosecution as we are required to do, we find that the evidence presented was sufficient to support a finding that reasonable minds could reach different conclusions as to whether each element of the offense as charged had been proven beyond a reasonable doubt. Consequently, the trial court did not err in denying appellant's motion for acquittal on this charge.

Accordingly, appellant's eleventh assignment of error is overruled.

## IX

Appellant's twelfth and thirteenth assignments of error challenge the constitutionality of R.C. 2921.13(A)(4), having a weapon while under the disability of chronic alcoholism.

Because we vacated appellant's conviction under this statute, it is not necessary for us to address appellant's constitutional arguments.[46]

## X

In conclusion, appellant's convictions are affirmed in part and vacated in part. Appellant's conviction for having a weapon while under the disability of chronic alcoholism is hereby vacated, while his conviction for failing to comply with an order or signal of a police officer is affirmed.

*Judgment accordingly.*

KARPINSKI, J., concurs.

PORTER, P.J., concurs in judgment only.

Appendix

Assignment of Error No. I

Defendant was denied due process of law when the court overruled his motion to dismiss by reason of the fact that he was not informed of the nature and cause of the accusation.

---

45. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184, syllabus.

46. See *State ex rel. Herbert v. Ferguson* (1944), 142 Ohio St. 496, 503, 27 O.O. 415, 418, 52 N.E.2d 980, 983–984.

### Assignment of Error No. II

Defendant was denied due process of law when he was subjected to a vindictive prosecution and a prosecution in violation of a plea bargain entered with respect to other charges.

### Assignment of Error No. III

Defendant was denied due process of law when the court overruled a motion to suppress.

### Assignment of Error No. IV

Defendant was denied due process and a fair trial when the court allowed into evidence improper records involving prior convictions.

### Assignment of Error No. V

Defendant was denied a fair trial when the court permitted evidence of traffic citations given to the defendant.

### Assignment of Error No. VI

Defendant was denied a fair trial when the court ruled that evidence of other acts could be used substantively to convict defendant.

### Assignment of Error No. VII

Defendant was denied a fair trial by reason of improper and prejudicial statements by the prosecutor during the closing arguments.

### Assignment of Error No. VIII

Defendant was denied a fair trial when the court permitted irrelevant evidence and evidence about refusals to take a breath test.

### Assignment of Error No. IX

Defendant was denied a fair trial when the court would not give defendant's proffered instruction on alcoholism.

### Assignment of Error No. X

Defendant was denied due process of law when the court overruled his motion for judgment of acquittal for having a weapon under disability.

### Assignment of Error No. XI

Defendant was denied due process of law when the court overruled his motion for judgment of acquittal concerning the failure to comply with a signal from a police officer.

### Assignment of Error No. XII

Defendant was denied due process of law when the court refused to dismiss the offense of having a weapon under disability as being unconstitutional on its fact [*sic*] or as applied.

### Assignment of Error No. XIII

Defendant was denied substantive due process because the statute prohibiting having a weapon under disability is overbroad and prohibited otherwise lawful activity.