JOURNAL ENTRY AND OPINION
Defendant-appellant John Gasiorowski appeals from his conviction for failure to comply with an order or signal of a police officer in violation of R.C. 2921.331. The appellant was also convicted of the furthermore clause in the indictment, the operation of a motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property in violation of R.C. 2921.331(C)(5)(a)(ii). After a trial to the bench, the appellant was placed on community control sanctions for one year, ordered to perform 100 hours of community work service, obtain/maintain full time employment, and obtain a GED.
On August 11, 2000, the appellant and two of his friends, James Boege and Terry Welms[1] were each driving a motorcycle on Interstate 71 northbound. Each motorcycle was also carrying a passenger and Melissa Yunker was the passenger on the appellant's motorcycle. Rebekah Less was the passenger on the motorcycle driven by Boege.
As a part of the Step Program to apprehend speeding, reckless and aggressive drivers, the Strongsville Police Department set a speed trap on I-71. Police Officer Anthony Zacharyasz was deployed on the I-71 bridge overpass on Route 82. His assignment was to operate the radar. At approximately 9:54 p.m., officer Zacharyasz observed three motorcycles speeding on I-71 and he estimated their speed to be approximately 85-90 m.p.h. He initiated the lazar unit and its readout was 88 m.p.h. The lazar unit clocked only one vehicle, but all three vehicles were traveling at the same rate of speed. Due to construction, the posted speed limit was 50 m.p.h. The area was not well lit, there was construction, and the traffic was light to medium.
Strongsville Police Officer Michael Guminey was posted on northbound I-71 between Boston and Pear Road in Cuyahoga County. Prior to the traffic stop in this present case, officer Guminey, who was in uniform and in a marked zone car, was involved in another traffic stop. Officer Guminey was notified by officer Zacharyasz via radio that three motorcycles were traveling at excessive speed. Two other police vehicles were in pursuit of the motorcycles. Officer Guminey observed two motorcycles fly by and then observed two patrol vehicles in pursuit. Both police vehicles had lights and sirens activated. Officer Guminey then entered the chase and pulled over the third motorcycle driven by James Boege.
Strongsville Police Officer Michael Norris received the same radio contact from officer Zacharyasz regarding the speeding motorcyclists. He observed three "race-type, crotch-rocket type motorcycles" (T. 103). Officer Norris joined the pursuit with his lights and sirens activated. Traffic was light south of Route 82 and heavier north of Route 82. Officer Norris testified that as he pulled up behind the motorcycles, their engines revved and the cyclists accelerated around a motor vehicle. The motorcycles went into the right lane of traffic and then forced their way back into the left lane, cutting between cars when there was not enough room (T. 105). Officer Norris continued his pursuit and as he gained on the distance, the motorcycles again forced their way in between motor vehicles. At one point, one of the motorcycles almost hit the back of a car. The motor vehicles on the highway had to hit their brakes to try to avoid the motorcycles.
Officer Norris was able to meander through traffic and continue his pursuit (T. 106). There was a time when he was directly behind the motorcycles and the motorcycles accelerated and maneuvered to place a greater distance between themselves and the officer. There were at least five occasions when the motorcycles maneuvered and placed a distance between themselves and Officer Norris. This erratic driving continued for 1.2 miles, from the beginning of the construction until the turnpike bridge. Officer Norris stated that one of the passengers turned around and looked at him, but did not see any of the motorcycle drivers directly look at him. One of the appellant's co-defendant's Terry Welms, was stopped by Officer Norris.
Rebekah Less, who was a passenger on Boege's motorcycle, testified that the appellant was weaving and driving in between cars (T. 63). Melissa Yunker, the appellant's passenger, testified that she was the passenger on the appellant's motorcycle. Ms. Yunker stated that on the evening of August 11, 2000, she and two of her friends accompanied three men on a motorcycle drive. While on I-71, the appellant accelerated and began swerving in between other vehicles (T. 16). Ms. Yunker was permitted by the court to illustrate the appellant's driving path on a blackboard. Verbally, she testified that the appellant drove around cars and between cars. After observing this conduct once, she closed her eyes, however, she could feel the motorcycle swerve on two or three occasions and she knew they were traveling at a high rate of speed. After the appellant exited the highway, he stated to Ms. Yunker that the police had been chasing them (T. 21).
The appellant sets forth the following assignment of error:
 THE TRIAL COURT ERRED IN FINDING APPELLANT GUILTY OF THE OFFENSE, ENHANCED BY THE "FURTHERMORE" CLAUSE, BECAUSE THERE WAS NO EVIDENCE THAT APPELLANT ENGAGED IN ANY CONDUCT THAT CREATED A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM TO PERSONS OR PROPERTY.
The appellant asserts that his conviction is against the manifest weight of the evidence because: 1) the testimony of the police officers did not distinguish between the conduct of the appellant and his two co-defendants; 2) that the testimony of lay witnesses could not establish that the operating conduct of the appellee created a substantial risk of harm; 3) there was no evidence that the appellant eluded or fled from the police; and, 4) the testimony of the passenger that she was in fear is irrelevant to the issue of substantial risk.
The Ohio Supreme Court has clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence. In State v. Thompkins (1997), 78 Ohio St.3d 380 the Court illuminated its test for manifest weight of the evidence by citing to Black's Law Dictionary (6 Ed. 1990) at 1594:
 Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
Thus, as the concurring opinion noted, when deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion. The only special deference given in a manifest weight review attaches to the conclusion reached by the trier of fact.Thompkins, (Cook, J., concurring) citing to State v. DeHass (1967),10 Ohio St.2d 230.
In R.C. 2921.331 the legislature set forth the statutory requirements which must be met by the State in order to prove that an offender failed to comply with order or signal of police officer. The pertinent sections of R.C. 2921.331 are as follows:
 (B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.
 (C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer. * * *
 (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:
* * *
 (ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.
A "substantial risk" is a "strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). Serious physical harm to persons includes physical harm which carries a substantial risk of death, permanent incapacity or substantial temporary incapacity, acute pain, disfigurement, or mental illness or condition requiring psychiatric treatment or prolonged hospitalization. R.C.2901.01(A)(5). "Serious physical harm to property" includes a substantial devaluation in property, a substantial interference with the enjoyment of property or requires a substantial amount of time, effort or money to repair. R.C. 2901.01(A)(6). See, also, State v. Semenchuk (1997),122 Ohio App.3d 30.
It is clear that simply because an offender is fortunate enough not to actually cause harm is of no consequence. Semenchuk, supra. It is only the strong possibility that harm could occur that creates culpability under R.C. 2921.331(C)(3). Id. This court has held that speeding, weaving and driving in opposite direction of traffic creates a substantial risk of serious physical harm. State v. Moore (Jan. 28, 1993), Cuyahoga App. No. 61673, unreported.
In the case sub judice, the trier of fact heard testimony from five eyewitnesses. Each of these witnesses observed the motorcycles were traveling far in excess of the speed limit in a construction zone. Officers Zacharyasz and Norris testified that they operated their sirens and lights. Officer Zacharyasz testified that all three motorcycles were traveling the same rate of speed. Thus, even though the officer may not have said the appellant, by name, was traveling at 88 m.p.h., he did clock one vehicle at that speed and observed all of the motorcycles were traveling the same speed. Officer Norris testified that there were at least five occasions when the motorcycles maneuvered through traffic and/or drove between vehicles on the road. Ms. Less and Ms. Yunker both testified as to the appellant's weaving and maneuvering through traffic and as to the excessive rate of speed. We also note that the trial court had the benefit of direct observation of the witnesses illustrations on the chalkboard.
The trial court also heard evidence about the conditions of that section of I-71 as they existed at the time. The area was a well-marked construction zone that was not well lit. The traffic went from light to medium as it began to slow and bottleneck. There were orange barrels and little if any berm space.
There was evidence persuasive enough to convince a trier of fact beyond a reasonable doubt, here the trial court itself, that: 1) the appellant operated his motorcycle so as to willfully elude or flee the police officer after receiving visible and audible signals to stop, and 2) the appellant operated his motorcycle in such a way as to cause a substantial risk of serious physical harm to persons or property.
The appellant's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and KENNETH A. ROCCO, J., CONCUR.
[1] The trial court granted the Crim.R. 29 motions to acquit made by both Boege and Welms.