JOURNAL ENTRY AND OPINION
On February 2, 1998, the grand jury issued an indictment against appellant-defendant Elijah Paschal ("appellant") and his co-defendant, Brandon Hill; the grand jury charged the defendants with aggravated robbery in violation of R.C. 2911.01 with firearm specifications. At his arraignment on February 17, 1998, appellant entered a plea of not guilty to the charges set forth in the indictment.
Appellant's case proceeded to a jury trial on June 9, 1998. The state commenced its case by presenting the testimony of the victim, Vladimir Khlistunov. Mr. Khlistunov worked part time as a delivery driver for a Marco's Pizza store in South Euclid, Ohio. On October 7, 1997, Mr. Khlistunov drove to an address on Oak Road in Cleveland Heights, Ohio, to deliver three pizzas. According to Mr. Khlistunov, he arrived at his destination at approximately 9:30 p.m. Mr. Khlistunov testified that two young males approached him; the second young man was armed with "a long barrel revolver pistol." The gunman demanded the pizzas and money from Mr. Khlistunov. The gunman removed approximately $120.00 from Mr. Khlistunov's wallet and ordered his victim to leave the area.
Mr. Khlistunov testified that he returned to the Marco's Pizza store and immediately contacted law enforcement. According to Mr. Khlistunov, only two young males approached him; however, Mr. Khlistunov noted that it was dark and the robbery happened "very quickly." Mr. Khlistunov could not identify his assailants.
Leamon Crawford testified as the state's second witness. Mr. Crawford lives on Colonial Road in Cleveland Heights, Ohio, near the intersection with Oak Road. Mr. Crawford testified that he witnessed the subject robbery. According to Mr. Crawford, he observed three males approach the victim from different directions; one of the assailants had a gun. After they completed their crime, the three robbers ran from the scene.
The state then presented the testimony of Detective David Carl Watson of the Cleveland Heights Police Department. Detective Watson investigated the subject robbery with Detective George Gurich. Detectives Watson and Gurich interviewed Brandon Hill after police apprehended him in connection with the robbery. Hill was a juvenile and, therefore, his mother and stepfather were present during the interview. Detective Watson testified that the police discovered $45.00 in Hill's possession, approximately one-third of the money reportedly stolen from Mr. Khlistunov. According to Detective Watson, Hill's mother indicated that her son did not have any money when he left for school that morning. Initially, Hill offered at least two different explanations regarding the $45.00; however, his mother urged him to tell the truth. Hill finally confessed when the police informed him that they would test the money for Mr. Khlistunov's fingerprints. During his confession, Hill implicated three accomplices, Elijah Blue, Ernest Collins, and a third male named "Laron".
Detective Watson testified that the police investigation indicated that "Laron" did not exist. The police located Ernest Collins and Elijah Blue Paschal. Detective Watson interviewed Ernest Collins in the presence of his mother. Collins also confessed to the robbery and implicated appellant, Hill, and Laron. Detective Watson also interview a witness, Mr. Crawford, and the victim, Mr. Khlistunov.
The state then presented the testimony of Brandon Hill. The court allowed the state to treat Hill as a hostile witness. Although he had already pled guilty for his role in the robbery, Hill insisted that he was not involved in the robbery. Hill claims he was walking home after playing basketball when he "saw someone being robbed by two people." Hill identified the perpetrators as Ernest Collins and a young man named "Laron." According to Hill, appellant was not involved in the subject robbery. Hill acknowledged that he and appellant have been good friends since the third or fourth grade. Hill conceded that he provided a statement to the police that implicated appellant; however, Hill subsequently retracted that statement.
The state called as its fifth witness Clarence Arthur Syndor. Mr. Syndor lives at 3221 Oak Road in Cleveland Heights, Ohio. On October 7, 1997, Mr. Sydnor was taking his trash out when he observed a young male sitting on the steps of his house. Mr. Syndor also noticed "some teenagers hanging out" across the street. According to Mr. Syndor, he went back outside a short time later and noticed that the teenagers had left the area. Approximately twenty to thirty minutes later, the police arrived on the scene and interviewed him.
The state then presented the testimony of Donna Jean Hudson, Ernest Collins' mother. Ms. Hudson testified that she has visited her son in the detention center almost every day since he pled guilty for his role in the robbery. Ms. Hudson acknowledged that her son has asserted several different versions of events regarding the subject robbery; however, she testified that her son has told her appellant was involved in the robbery.
The state called Ernest Collins to testify as the seventh witness. Collins testified in depth concerning the subject robbery. According to Collins, he, Brandon Hill and appellant were involved in the robbery. The trio planned the robbery on the porch of Brandon Hill's house. Collins described the positions where he and his two co-conspirators lay in wait for their victim. When the delivery man arrived, the three assailants (Collins, Hill and appellant) converged on their victim. Collins testified that he grabbed the pizzas, and Hill put a gun to the victim's head and demanded his money. The three assailants then ran to Hill's house where they split the money from the robbery. According to Collins, he and appellant each received $35.00 for their role in the robbery; Hill received more of the money because he was the gunman.
Collins testified about the four statements he gave regarding the robbery. Each statement contained a different version of events; however, Collins implicated appellant in three of the four statements. Collins explained why he provided appellant's mother with the third statement wherein he exonerated appellant. Collins testified that appellant was involved in the robbery.
The state called Detective George Gurich as its final witness. Detective Gurich assisted Detective Watson with the investigation of the subject robbery. Detective Gurich interviewed appellant in the presence of appellant's mother; appellant had already been implicated by Brandon Hill and Ernest Collins. Appellant denied any involvement in the robbery.
After Detective Gurich's testimony, appellant moved for acquittal pursuant to Crim.R. 29. The trial court denied appellant's motion. The next day, appellant presented the testimony of his mother, Bernazil Paschal. Ms. Paschal testified that she talked to her son near Cain Park after school on October 7, 1997. Ms. Paschal gave appellant permission to play basketball with his friend. According to Ms. Paschal, appellant called her and requested a ride home at approximately 7:00 p.m. that evening. Ms. Paschal sent appellant's older brother, Gabriel Paschal, to pick up appellant. Ms. Paschal testified that her sons returned at approximately 8:00 p.m., and that appellant was home for the rest of the evening. Two days later, Brandon Hill and Ernest Collins told Ms. Paschal about the robbery and told her appellant had nothing to do with the crime.
Appellant's brother, Gabriel Paschal, also testified that he picked appellant up at 7:00 p.m. According to Mr. Paschal, they were home by 7:45 p.m. and appellant did not leave the house again that night. Appellant then testified on his own behalf. Appellant's testimony mirrored the alibi testimony given by his mother and brother. After appellant's testimony, the defense renewed its motion for acquittal. The trial court again overruled appellant's motion.
After deliberation, the jury returned a verdict of guilty to the charge of aggravated robbery with a firearm specification. The trial court then imposed upon appellant consecutive prison terms of four years for aggravated robbery and three years on the firearm specification.
On October 1, 1998, appellant requested leave to file a delayed appeal; this court granted appellant's motion for leave to file a delayed appeal on October 27, 1998. Appellant now assigns the following errors for our review:
 I. ELIJAH PASCHAL WAS DEPRIVED OF HIS LIBERTY WITHOUT DUE PROCESS OF LAW BY HIS CONVICTION IN THE CASE AT BAR, AS SAID CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE TO PROVE HIS GUILT BEYOND A REASONABLE DOUBT.
 II. ELIJAH PASCHAL WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS AS THE TRIAL COURT FAILED TO REMEDY THE REPEATED PROSECUTORIAL MISCONDUCT WHICH UNFAIRLY PREJUDICED APPELLANT AT TRIAL.
 III. APPELLANT WAS UNFAIRLY PREJUDICED WHEN THE TRIAL COURT EXCLUDED EVIDENCE OF ERNEST COLLINS' BIAS AGAINST THE INTEREST OF APPELLANT.
For the following reasons, we find that appellant's assignments of error lack merit. Accordingly, we affirm the judgment of the trial court.
 I.
In his first assignment of error, appellant challenges the sufficiency of evidence presented by the state. The Supreme Court of Ohio reiterated the standard for determining whether the evidence is legally sufficient as a matter of law to support the jury verdict in State v. Thompkins (1997), 78 Ohio St.3d 380. 386-387, wherein the Supreme Court of Ohio held:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29 (A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
The state prosecuted appellant for aggravated robbery based upon the complicity statute, R.C. 2923.03. R.C. 2923.03 states:
 (A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
* * *
(2) Aid or abet another in committing the offense;
* * *
 (F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense.
To establish complicity, the state must prove beyond a reasonable doubt that the accused assisted, incited or encouraged another to commit the underlying crime. State v. Sims (1983),10 Ohio App.3d 56, 58. "Mere association with the principal is not enough to prove complicity. * * * The accused must have taken a role in causing the commission of the offense." Id. at 58-59. As this court stated in Sims:
 "Mere approval or acquiescence, without expressed concurrence or the doing of something to contribute to an unlawful act, is not an aiding or abetting of the act. State v. Peasley, 80 Wn., 99, 141 P., 316.
 "Without previous connection with the transaction, one is not an aider or abettor unless he knowingly does something which he ought not to do, or omits to do something he ought to do, which assists or tends in some way to affect the doing of the thing which the law forbids; in order to aid or abet, whether by words, acts, encouragement, support or presence, there must be something more than a failure to object unless one is under a legal duty to object. * * *"
Id. at 59.
Appellant claims that the state failed to present sufficient evidence to support his conviction for complicity in the subject robbery. Appellant notes that Ernest Collins offered the only direct testimony implicating appellant in the robbery. Appellant insists that the testimony of Ernest Collins merely establishes his presence during the robbery. This contention belies the record.
Ernest Collins testified that appellant was involved in the planning of the robbery.[1] Collins described the positions where he and his two co-conspirators lay in wait for their victim. Collins summarized appellant's role in the robbery as follows: "He [appellant] was like on the side of the house. He came around when the pizza man came and he standing [sic] right there with us." (Tr. 242.) Collins testified that he and appellant received $35.00 each from Hill for their respective roles in the robbery.
Collins indicated that appellant had a role in causing the commission of the offense. Ernest Collins' testimony was collaborated by the testimony of Leamon Crawford, an eyewitness to the robbery; Mr. Crawford testified that he observed three young men robbing the victim. In addition, Hill and Collins both implicated appellant in their statements to the police.
Appellant notes that the victim only saw two robbers; however, the robbery occurred after dark and Mr. Khlistunov testified that the robbery happened very quickly. Appellant also emphasizes the version of the robbery told by Brandon Hill. Hill claims that he witnessed the robbery while walking home from the park. Hill testified that Ernest Collins and the fictitious "Laron" committed the robbery. Hill insisted that neither he nor appellant were involved in the crime; however, Hill had already pled guilty for his role in the robbery and had implicated appellant in his statement to the police. Therefore, we find that Hill's testimony lacked even a scintilla of credibility.
Appellant also relied on the alibi testimony from his mother and brother. The testimony of Bernazil Paschal and Gabriel Paschal raised the usual presumption of bias from family members. Likewise, appellant's own self-serving testimony could have easily been disbelieved by a reasonable jury.
The state presented competent, credible evidence to support appellant's conviction. The first assignment of error is overruled.
 II.
As for his second assignment of error, appellant raises the following allegations of prosecutorial misconduct: (1) the prosecutor incorrectly stated the law regarding complicity during closing arguments; (2) the state improperly referred to appellant's exercise of his constitutional right to remain silent during police interrogation; (3) the state failed to disclose oral statements made by appellant to the police; (4) the state repeatedly engaged in an improper line of questioning during the cross-examination of appellant and his mother. Appellant claims that the aggregate effect of the prosecution's conduct deprived him of a fair trial.
"The test for prosecutorial misconduct is whether remarks were improper and, if so, whether the rights of the accused are materially prejudiced." State v. Goodwin (1999), 84 Ohio St.3d 331,339. An appellate court should not reverse a conviction based upon prosecutorial misconduct unless the challenged conduct deprived the defendant of a fair trial. State v. Tillman (1997),119 Ohio App.3d 449, 462. The effect of the prosecutor's misconduct must be considered in light of the trial as a whole.State v. Maurer (1984), 15 Ohio St.3d 239, 266.
Appellant's first and second allegations of prosecutorial misconduct occurred during the state's closing argument. Parties should be afforded wide latitude in closing arguments. State v.White (1998), 82 Ohio St.3d 16, 23. A conviction will not be reversed if the jury would have found the defendant guilty notwithstanding the prosecutor's remarks. State v. Loza (1994),71 Ohio St.3d 61, 78.
Appellant first complains about the following portion of the prosecution's closing statement:
 * * * It's called aiding or abetting. Those things simply mean, ladies and gentlemen, aiding means to help, assist or strengthen just by being there in sheer numbers, adding his element to the crime. (Tr. 555-556.)
Defense counsel objected, and the trial court immediately offered this curative instruction:
 The Court will instruct the jury on the law. You will hear the law from the Court. (Tr. 556.)
This court must presume the jury followed the curative instruction. See State v. Wilson (1972), 30 Ohio St.2d 199, 204, and, therefore, we find no prejudicial effect from the challenged statement of law in the prosecution's closing argument.
Appellant also objected to the following comments by the prosecution during closing arguments:
 * * * What does the defendant do? He wants to manipulate the truth but he is guilty as he sits here wrapped in the Bill of Rights. I'm not saying anything, I don't have to say anything. (Tr. 561-562.)
Defense counsel objected to this comment, and the trial court sustained the objection.
"In the trial of a criminal case, reference by the prosecutor in his final argument to the jury to defendant's previously asserted silence at any stage of the accusatorial process, or to implications drawn therefrom, is not permissible unless the record clearly demonstrates by the action or testimony of the defendant that he has waived the privilege against self-incrimination previously invoked." State v. Stephens (1970),24 Ohio St.2d 76, paragraph one of the syllabus (emphasis added). We find no prejudice in the prosecutor's comments regarding the right to remain silent because appellant waived the privilege against self-incrimination, viz., appellant voluntarily gave a statement to the police and, at trial, testified on his own behalf.
Appellant next complains that the state failed to provide the defense with a written summary of the oral statements appellant had made to the police. Crim.R. 16 (B) (1) (a) (ii) requires that the state provide the defense with a written summary of any oral statement made by a defendant to law enforcement. Notwithstanding, the trial court allowed Detective Gurich to testify regarding appellant's oral statements, and, in particular:
 He [appellant] said at one point sometime prior to this robbery occurring he had seen a gun in Brandon Hill's possession in the basement of Brandon's home. I asked him to describe the gun to me, he told me it was a revolver with a long barrel. (Tr. 402.)
We agree that the state violated Crim.R. 16 by not informing the defense of appellant's oral statements to the police until trial. Under Crim.R. 16, however, the trial court has discretion in determining the sanction to be imposed for a party's nondisclosure of discoverable material; the court is not required to exclude the material from trial. State v. Parson (1983),6 Ohio St.3d 442, 445. "The court does not abuse its discretion in admitting evidence undisclosed in discovery unless the record shows that the prosecutor's discovery violation was willful, that foreknowledge would have benefitted the accused in preparing his defense, or that the accused was unfairly prejudiced." State v.Otte (1996), 74 Ohio St.3d 555, 563.
In the instant case, the record does not indicate that the state's discovery violation was willful. Prior knowledge of appellant's oral statements would not have benefitted the defense and, more importantly, the exclusion of the oral statements would not have changed the outcome of the underlying case. Therefore, the trial court did not abuse its discretion in permitting Detective Gurich to testify regarding appellant's oral statements to the police notwithstanding the state's violation of Crim.R. 16.
Appellant also claims that the state repeatedly engaged in an improper line of questioning during the cross-examination of appellant and his mother. We note that parties should be afforded wide latitude on cross-examination of a witness. State v.Garfield (1986), 34 Ohio App.3d 300, 303. The trial court retains broad discretion over the scope of cross-examination. State v.Clark (1995), 101 Ohio App.3d 389, 423.
Appellant first cites page 469 (lines 20 to 25) of the transcript to support the contention that "the prosecutor asks Appellant's mother why Appellant invoked his 5th Amendment rights." Appellant misrepresents the record; the cited portion of the transcript actually contains the following question:
 Q. So then if I told you that Brandon Hill came in here and when I asked him about the meeting at your house with the people involved and he [Hill] said the I take the 5th Amendment, I don't want to answer that question on the grounds it may incriminate himself do you know why he would do that? (Emphasis added.)
* * *
 Q. Isn't it a fact the reason Brandon took the 5th, you all did have a meeting that day; is that true? (Tr. 469-470.)
We find that the prosecutor properly cross-examined appellant's mother on a meeting she had with the three robbers to collaborate their stories. Appellant also challenges the following questions posed by the prosecutor to appellant during cross-examination:
 1. "Do you have any idea why he [Brandon Hill] would say Elijah was involved in the robbery?" (Tr. 519.)
 2. "Why do you think he [Brandon Hill] put your name [in his statement to the police]? (Tr. 519.)
 3. "Why do you think he put your name in that statement?" (Tr. 519.)
 4. "You have no idea why he would put your name in that statement?" (Tr. 520.)
 5. "If you were not good friends with Ernest Collins and you just saw Brandon Hill, why did they feel so close and come to your house and confess to your mom that they were involved in an aggravated robbery with a pizza man?" (Tr. 528.)
Defense counsel objected to these questions, and appellant maintains that "[t]he prosecutor repeatedly asked Appellant to testify to things of which he could have no personal knowledge, essentially badgering the witness in front of the jury." We find that these questions were appropriate under the broad scope of Evid.R. 611 (B).
In summary, we reject appellant's claims of prosecutorial misconduct. The allegedly improper comments and questioning were minor and isolated; the aggregate effect of the challenged conduct did not deprive appellant of a fair trial. Appellant's second assignment of error is overruled.
 III.
In his final assignment of error, appellant claims that the trial court erred in excluding a copy of the juvenile court docket of Ernest Collins' criminal case. The docket revealed that Collins had a remaining court date when he provided Detective Gurich with a statement which implicated appellant.[2]
Appellant asserts that the excluded exhibit would have supported his proposition that Collins implicated appellant to placate the prosecution. Appellant notes that Collins' credibility was critical in this case because Collins offered the only direct evidence of appellant's role in the robbery and, therefore, evidence showing Collins' potential bias would have been crucial to the defense.
"Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Evid.R. 616 (A). Decisions on the admissibility of evidence are within the sound discretion of the trial court and, therefore, will not be reversed on appeal absent an abuse of discretion. State v. Semenchuk (1997),122 Ohio App.3d 30, 41. An abuse of discretion means more than a mere error of law or judgment; it implies an arbitrary, capricious, or unconscionable attitude on the part of the trial court. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
In the instant case, defense counsel elicited the following testimony from Ernest Collins:
 Q. And there was still going to be a second hearing as to whether or not you were bound over, correct?
A. Yes.
 Q. So you met with your attorney and Detective Gurich and there was a discussion as to whether or not you were going to get bound over or whether or not you would stay in Juvenile Court and do Juvenile Court time, correct?
A. Yes.
 Q. And as a result of that discussion and those meetings we came through with the fourth statement, correct?
A. Yes. * * * (Tr. 378-379.)
Defense counsel elicited testimony from Collins during cross-examination regarding the status of his case when he provided the fourth statement and, through this testimony, suggested that Collins made the statement implicating appellant to avoid being prosecuted as an adult. A copy of the juvenile court docket of Collins' case would have been cumulative evidence. A court has discretion to exclude cumulative evidence under Civ.R. 403 (B).
A trial court's evidentiary rulings will not be reversed unless it constituted a prejudicial error. State v. Lundy (1987),41 Ohio App.3d 163, 169. Assuming arguendo that the trial court abused its discretion in excluding a copy of the juvenile court docket of Collins' criminal case, we find any error in this regard to be harmless based upon the cumulative nature of the excluded exhibit and the weight of the evidence against appellant.
Appellant's third assignment of error is overruled. The judgment of the trial court is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, P.J. and TERRENCE O'DONNELL, J. CONCUR.
 _______________________________ LEO M. SPELLACY JUDGE
[1] Collins testified as follows:
Q. How did you know what was going to happen?
A. Because we had planned it already.
Q. You had planned it with whom?
A. Brandon and Eli [Elijah Paschal].
 Q. You had a conversation with Brandon and Eli about going to rob the pizza man?
A. Yeah. (Tr. 238)
[2] We note that Collins had provided four different statements regarding the subject robbery: (1) a statement during his initial interview with the police; (2) a statement to appellant's mother exculpating appellant; (3) a statement to the juvenile court judge; and (4) the statement to Detective Gurich. Three of the four statements implicated appellant.