OPINION
{¶ 1} Appellant, Kandale L. Harrison ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court convicted appellant of failure to comply with an order or signal of a police officer ("failure to comply"), tampering with evidence, and possession of cocaine. For the following reasons, we affirm. *Page 2 
 {¶ 2} On March 15, 2006, the Franklin County Grand Jury indicted appellant on: (1) one count of failure to comply, in violation of R.C.2921.331, a felony of the third degree; (2) one count of tampering with evidence, in violation of R.C. 2921.12, a felony of the third degree; and (3) one count of possession of cocaine, in violation of R.C.2925.11, a felony of the fourth degree. Appellant waived his right to a jury and submitted to a bench trial. At the conclusion of the trial, on July 26, 2006, the trial court found appellant guilty of all three counts. On July 27, 2006, the trial court filed its judgment entry, convicting appellant of all three counts and sentencing appellant accordingly.
 {¶ 3} On February 16, 2007, this court granted appellant leave to file a delayed appeal pursuant to App.R. 5(A). Appellant raises a single assignment of error:
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellant argues that the evidence presented at trial was insufficient to sustain a conviction on any of the three charges and that his conviction on each was against the manifest weight of the evidence.
 {¶ 4} The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict as a matter of law. Id. In determining sufficiency, we examine the evidence in the light most favorable to the state and determine whether any rational trier of fact could have found that the state *Page 3 
proved the essential elements of the offense beyond a reasonable doubt.State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, at ¶ 34, followingJackson v. Virginia (1979), 443 U.S. 307, 319; State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless reasonable minds could not arrive at the conclusion reached by the trier of fact. State v. Jenks (1991), 61 Ohio St.3d 259, 273. We do not assess whether the evidence is to be believed; rather, we determine whether, if believed, the evidence would support a conviction. SeeJenks, paragraph two of the syllabus; State v. Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 5} A court of appeals may determine that a verdict is supported by sufficient evidence but, nevertheless, conclude that the judgment is against the manifest weight of the evidence. State v. Robinson (1955),162 Ohio St. 486, 487. In determining whether a verdict is against the manifest weight of the evidence, an appellate court sits as a "`thirteenth juror'" and reviews the entire record, weighs the evidence and all reasonable inferences, and considers the credibility of witnesses. Thompkins at 387, quoting Tibbs v. Florida (1982),457 U.S. 31, 45. Additionally, we determine "`whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Thompkins at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds in only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable [trier of fact] could not find the testimony of the witness to be *Page 4 
credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 6} Having set forth the applicable standards of review, we now turn to the offenses of which appellant was convicted and the evidence presented at trial. We first address appellant's conviction for failure to comply and then address, together, appellant's convictions for possession of cocaine and tampering with evidence.
 {¶ 7} The trial court convicted appellant of failure to comply, in violation of R.C. 2921.331(B), which provides that "[n]o person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." Except in certain prescribed situations, violation of R.C. 2921.331(B) is a first-degree misdemeanor. However, a violation is elevated to a third-degree felony if the trier of fact finds, beyond a reasonable doubt, that the offender's operation of the motor vehicle "caused a substantial risk of serious physical harm to persons or property." R.C.2921.331(C)(5)(a)(ii). Because the trial court found that appellant's operation of his motor vehicle caused a substantial risk of serious harm to persons or property, it convicted appellant of the enhanced, third-degree felony.
 {¶ 8} Appellant concedes that he operated his vehicle "so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring [his] motor vehicle to a stop." R.C. 2921.331(B). However, appellant argues that the trial court lacked sufficient evidence from which to find, beyond a reasonable doubt, that his operation of his motor vehicle caused a substantial risk of serious harm to persons *Page 5 
or property. Appellant also argues that such a finding was against the manifest weight of the evidence.
 {¶ 9} In R.C. 2901.01(A)(8), the General Assembly defines "substantial risk" as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Pursuant to R.C. 2901.01(A)(5), "serious physical harm to persons" means any of the following:
 Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 Any physical harm that carries a substantial risk of death;
 Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;
 Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.
"Serious physical harm to property" is defined as physical harm to property that either:
 Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace; [or]
 Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.
R.C. 2901.01(A)(6). *Page 6 
 {¶ 10} At trial, appellee, the State of Ohio, presented the testimony of three police officers from the City of Hilliard who were involved in the pursuit and apprehension of appellant. We review the officers' testimony in turn.
 {¶ 11} Officer Joshua Cohill ("Cohill") was working traffic duty on I-270 southbound a few minutes before 3:00 a.m. on September 24, 2005, when he observed a silver vehicle, later determined to be operated by appellant, traveling at 88 m.p.h. in a 65 m.p.h. zone. Cohill described the traffic on I-270 at the time as "light" in both directions. (Tr. at 40, 47.) After observing appellant's vehicle, Cohill pulled out from the median and activated his flashing lights and sirens, but appellant did not stop. Rather, appellant exited the freeway at Cemetery Road, barely slowing before running a red light at the end of the exit ramp. Cohill radioed that he was in pursuit of a speeding vehicle and continued to pursue appellant's vehicle through a commercial area for approximately one and a half miles. Cohill testified that he was traveling 55 or 60 m.p.h. in a 35 m.p.h. zone, trying to catch up with appellant. Appellant ran a stop sign and drove left of center while pursued by Cohill. Having lost sight of appellant's vehicle, Cohill terminated his pursuit when appellant drove over a curb and behind a business.
 {¶ 12} Several minutes later, Cohill heard, over the radio from another officer, that appellant's vehicle had stopped on Leap Court and that appellant was running on foot. Cohill immediately proceeded to the reported area, which he described as residential. There, Cohill observed appellant running through a field and pursued appellant on foot. According to Cohill, Officer Jim Large ("Large") was also pursuing appellant on foot with a police dog. From a distance of 20 to 30 yards behind appellant, with his flashlight drawn, Cohill observed something drop in the weeds from appellant's *Page 7 
hand or somewhere around him. Cohill then pulled his gun, ordered appellant on the ground, and apprehended him. Cohill's search of appellant's person uncovered approximately $810 in cash and a check for $2,000. Cohill issued appellant a traffic citation for "speed, suspended driver's license, traffic control device and left of center." (Tr. at 37.)
 {¶ 13} The second officer to testify was Jack D. Lightfoot ("Lightfoot"), who heard Cohill's call over the radio. Lightfoot observed appellant's vehicle turn into a parking lot and jump a barrier at the back of the business, at which time he temporarily lost sight of appellant's vehicle. Lightfoot also observed a small tree knocked down near the entrance to the parking lot and tire tracks leading to the tree from the direction that appellant's vehicle had been traveling. However, Lightfoot did not observe appellant hit the tree.
 {¶ 14} When Lightfoot next observed appellant's vehicle, he activated his flashing lights and spotlight and pursued appellant. During the pursuit by Lightfoot, appellant ran two red lights and traveled at speeds in excess of the speed limit. Lightfoot testified that he was traveling at 65 m.p.h. in a 35 m.p.h. zone and that appellant's vehicle was pulling away from him. Lightfoot observed appellant twice drive in the wrong lane of travel, once for a distance of a quarter mile, and cross a center barrier while attempting a right turn at an excessive speed. The area where appellant crossed the center barrier while turning right was near a 24-hour Kroger store that is "always busy." (Tr. at 61.) Lightfoot also observed appellant execute a U-turn over a median barrier, causing an oncoming vehicle to swerve. Lightfoot testified that appellant "nearly collided" with the other vehicle. (Tr. at 59.) Subsequently, Lightfoot observed appellant turn into an *Page 8 
apartment complex, pull into a parking space, and exit his vehicle. Lightfoot ceased following appellant when he saw an object, which he believed to be a gun, in appellant's left hand. Later, Lightfoot assisted Cohill in apprehending and searching appellant.
 {¶ 15} The final officer to testify was Large, who heard Cohill's initial radio call and proceeded in the reported direction of appellant's vehicle. At no time was Large the primary officer following appellant's vehicle. After appellant's vehicle entered the apartment complex, Large observed appellant running westbound through the apartment complex and pursued him on foot with a police dog, at the same time that Cohill was pursuing appellant on foot. While approximately 40 to 55 yards behind appellant in an open field and while shining his flashlight on appellant, Large observed appellant throw something into a line of bushes or trees. Large did not know which hand appellant used to make the throwing motion. After Cohill and Lightfoot apprehended appellant and led him back to a police cruiser, Large began searching, with the police dog, for the object that appellant threw into the bushes or trees. Within ten yards from where Cohill and Lightfoot ordered appellant to the ground and apprehended him, and "right inside of that tree line or in the area where we saw him making the [throwing] motion," Large recovered a small package. (Tr. at 80.) The parties stipulated that the package contained seven grams of cocaine, a schedule-II, controlled substance. No other objects were recovered from the vicinity.
 {¶ 16} Appellant argues that the officers' testimony was insufficient for the trial court to conclude, beyond a reasonable doubt, that his operation of his motor vehicle caused a substantial risk of physical harm to persons or property and that such a conclusion was against the manifest weight of the evidence. Appellant argues that the *Page 9 
evidence establishes that there was little to no traffic on the roads, that appellant had his headlights on at all times, and that road and weather conditions were normal. Appellant also argues that he did not come into contact with any person or vehicle.
 {¶ 17} The testimony at trial established that appellant fled from police officers at excessive speeds, both on the freeway and through commercial and residential areas, traveling 88 m.p.h. on I-270 and 55 to 60 m.p.h. in 35 m.p.h. zones after exiting the freeway. The testimony further established that appellant ran three red lights and one stop sign, drove over a curb and two center barriers, and, at least twice, drove in the opposite lane of travel, once for a distance of a quarter mile. Although the pursuit occurred during the early morning hours, when few cars were on the road, Cohill testified that there was light traffic in both directions of I-270. Additionally, Lightfoot testified that, when executing a U-turn over a center median, appellant nearly collided with an oncoming vehicle, which had to swerve to avoid a collision. Thus, the evidence establishes that some other cars were on both the freeway and at least one of the other streets through which appellant led the officers. See State v. Lyons (July 20, 1993), Franklin App. No. 92AP-1642.
 {¶ 18} In addition to the clear and substantial risk of harm occasioned by a vehicle speeding through stop signs and red lights, "driving on the wrong side of the road in the opposite direction of traffic creates a strong possibility that serious physical harm to both persons and property may occur." State v. Semenchuk (1997),122 Ohio App.3d 30, 47. Appellant attempts to minimize his actions, arguing that he was only briefly in the wrong lane of travel and that the entire pursuit lasted only minutes, but we reject appellant's argument. The language of R.C. 2921.331(B) does not make the *Page 10 
offense dependent on the duration of the incident. See State v.Garrard, 170 Ohio App.3d 487, 2007-Ohio-1244, at ¶ 41.
 {¶ 19} Additionally, the fact that appellant did not actually collide with any person or vehicle is immaterial to the question of whether appellant's operation of his vehicle created a substantial risk of serious harm to persons or property. Id. at ¶ 45, citing State v.Love, Summit App. No. 21654, 2004-Ohio-1422. As the Ninth District Court of Appeals noted, when addressing a conviction of felony failure to comply:
 * * * A jury could * * * reasonably find that the failure of Appellant to engage in a "near collision" speaks to nothing more than Appellant's good luck and the careful driving on the part of other motorists on the road; such an assertion is irrelevant to our analysis because it fails to speak to the level of risk that Appellant's reckless driving created. * * *
Love at ¶ 19; see, also, Semenchuk (reviewing an enhanced failure to comply conviction and noting that the defendant's failure to cause actual harm was of "no consequence"). Here, unlike in Love, appellant did nearly collide with an oncoming vehicle, which had to swerve to avoid appellant's vehicle. Additionally, the record contains circumstantial evidence from which a reasonable trier of fact could infer that appellant hit and damaged a tree while pursued by Cohill. That appellant avoided an actual collision with another person or vehicle is irrelevant to our inquiry.
 {¶ 20} Viewing the evidence in the light most favorable to the state, we conclude that a rational trier of fact could reasonably conclude, beyond a reasonable doubt, that appellant's operation of his vehicle created a substantial risk of harm to persons or property. The facts argued by appellant, that weather conditions were normal and that appellant's headlights were illuminated at all times, do not alter our conclusion that sufficient evidence supported appellant's conviction. Moreover, we do not find that the *Page 11 
evidence weighs heavily against conviction. The trial court, as the trier of fact, did not lose its way and create a manifest miscarriage of justice when it convicted appellant of failure to comply, with the enhancement for creating a substantial risk of serious harm to persons or property.
 {¶ 21} Appellant next contends that his convictions for possession of cocaine and tampering with evidence are unsupported by sufficient evidence and against the manifest weight of the evidence. Both contentions lack merit. Appellant was convicted of possession of cocaine under R.C. 2925.11(A), which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Appellant was convicted of tampering with evidence under R.C. 2921.12(A)(1), which provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." Appellant's conviction for tampering with evidence stems from his alleged discard of the bag of cocaine while fleeing on foot. Appellant does not contest that the facts found by the trial court satisfy the elements of tampering with evidence. Rather, with respect to his convictions for tampering with evidence and possession of cocaine, appellant contends that the state's evidence failed to link him to the cocaine found near where he was apprehended. We disagree.
 {¶ 22} "Absent an admission by defendant, the surrounding facts and circumstances, including defendant's action, determine whether defendant knowingly possessed cocaine." State v. Baker, Franklin App. No. 02AP-627, 2003-Ohio-633, at ¶ 23. Possession of a controlled substance may be actual or constructive. State v. *Page 12 Hughes, Franklin App. No. 02AP-1208, 2003-Ohio-2317, at ¶ 22. "Circumstantial evidence alone may be sufficient to support the element of constructive possession. * * * The discovery of readily accessible drugs in close proximity to a person constitutes circumstantial evidence that the person was in constructive possession of the drugs." Id. at ¶ 24.
 {¶ 23} Here, although none of the witnesses specifically saw the bag of cocaine in appellant's hand, Lightfoot saw an object in appellant's left hand as he ran from his vehicle, and Cohill and Large each testified that they observed appellant throw an object into the tree line as he was fleeing on foot. Despite appellant's argument that the officers were chasing him through bushes, with no visibility, Cohill testified that the chase occurred in an open, grassy field. Large clarified that a tree line, where he recovered the bag of cocaine, separated the field from a school playground. Additionally, although it was dark, Cohill testified that he had his flashlight out, and Large testified that he was shining his flashlight on appellant at the time appellant threw the object. Large testified that the only object found in the area where appellant made a throwing motion was the bag containing the cocaine. Large also testified that he found the cocaine approximately ten yards from where appellant was apprehended. Viewing the evidence in the light most favorable to the state, such evidence provides a sufficient basis upon which a reasonable trier of fact could find that appellant knowingly possessed cocaine and find appellant guilty of both possession of cocaine and tampering with evidence.
 {¶ 24} Appellant attempts to discredit the officers' testimony, arguing that the officers were too far away to see him throw anything in the dark. Appellant also argues *Page 13 
that the absence of testimony that his fingerprints were found on the bag of cocaine or that other drugs were found on appellant's person or in his vehicle weighs in his favor. The weight to be given to the evidence and the credibility of the witnesses are determinations primarily for the trier of fact. See State v. DeHass (1967),10 Ohio St.2d 230. The trial court reasonably believed the officers' testimony. In rendering its verdict, the trial court commented that "F-4 amounts of cocaine aren't laying around residential neighborhoods all over the place." (Tr. at 101.) See State v. Brown, Cuyahoga App. No. 87932,2007-Ohio-527, at ¶ 11 (stating that "[i]t bordered on the unbelievable to think that someone had abandoned a bag of crack cocaine on a residential lawn and that appellant had the bad luck to walk in the path directly over it"). Although appellant criticizes the trial court's characterization of the area as residential, the evidence supports such a characterization; Cohill testified that the area was residential, and Lightfoot and Large testified that the foot pursuit of appellant initiated from a residential apartment complex. Here, as the trier of fact, the trial court could reasonably determine that the officers' uncontradicted testimony was credible and infer that appellant dropped or threw the cocaine while fleeing. Accordingly, we find that the trial court did not lose its way and create a manifest miscarriage of justice by convicting appellant of possession of cocaine and tampering with evidence.
 {¶ 25} For the foregoing reasons, we overrule appellant's assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 BROWN and TYACK, JJ., concur. *Page 1