[Cite as *State v. Bailey*, 2017-Ohio-771.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2016 AP 0032 |
| ARTHUR BAILEY | : |  |
|  | : |  |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Tuscarawas County Court of Common Pleas, Case No. 2015CR050147

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: March 3, 2017

APPEARANCES:

For Plaintiff-Appellee

RYAN STYER
Tuscarawas County Prosecutor's Office
125 East High Avenue
New Philadelphia, OH 44663

For Defendant-Appellant

GEORGE URBAN
116 Cleveland Avenue N.W.,
Ste. 808
Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Arthur Bailey ("Bailey") appeals from the June 2, 2016 Judgment Entry of the Tuscarawas County Court of Common Pleas convicting and sentencing him after a jury trial on one count of Failure to Comply with an Order or Signal of a Police Officer, a violation of R.C. 2921.331(B), elevated to a third-degree felony by the allegation that Bailey's operation of his motor vehicle caused a substantial risk of serious physical harm to persons or property.

*Facts and Procedural History*

{¶2} Officer Joshua Newman, a patrolman with the Dennison Police Department was on patrol on March 22, 2015, shortly after midnight. Officer Newman was patrolling South Fifth Street along with Officer Barbie, who was driving the police cruiser. The officers observed a green Subaru with a loud exhaust drive by them. Officer Barbie began to follow the Subaru. The vehicle properly stopped at a stop sign at Logan and South Sixth Streets and then turned right. After again hearing the loud exhaust, Officer Barbie followed the Subaru onto South Sixth Street and activated the police cruiser's emergency lights. The events were thereafter recorded by the cruiser's dashboard camera. Officer Barbie did not activate the sirens at this point. At the time the officers activated the overhead lights, they observed no traffic violations other than the alleged loud exhaust.

{¶3} Officer Newman then testified that the Subaru approached a stop sign at the corner of South Sixth and Race Streets, braked without making a complete stop, used the turn signal, turned left onto Race Street, and then accelerated on Race Street, a two-lane street, through the village of Dennison. No traffic was obstructed. Officer Newman testified that the sirens were activated at this point because he knew at this time that a chase was ensuing. The

speed limit on Race Street is thirty-five miles per hour and then changes to twenty-five miles per hour as Race Street turns into Taylor Avenue. As the Subaru was driving down Race Street, all four of the tires were in the wrong lane of travel. (1T. at 106-107).

{¶4} Officer Newman testified the Subaru was traveling faster than the speed limit, but could not state the Subaru's speed. The Subaru failed to stop at a stop sign at an intersection on Taylor Avenue, where the speed limit is twenty-five miles per hour, and proceeded through the intersection at an estimated speed of forty miles per hour. Officer Newman testified that it was unsafe to drive through that intersection at such a speed, noting that it was a residential area with a school and a park located nearby. It was after midnight. The school was not in session and the park had been closed since 10:00 p.m. There were no pedestrians in the area, and there was no oncoming cross traffic in the intersection.

{¶5} A short time later, Bailey passed an oncoming car while exceeding the speed limit. (1T. at 110). Less than one minute later Bailey passed another oncoming vehicle while traveling at approximately 60 miles per hour. (1T. at 110-111). At about six minutes and twenty seconds into the chase, the Subaru began pulling out of Officer Newman's sight. At approximately seven minutes into the pursuit, Bailey passed a large box truck that had activated its hazard lights. (1T. at 113). The box truck was travelling in the same lane as Bailey. Bailey passed the box truck on the left at a rate of approximately 80 miles per hour. (1T. 112-113).

{¶6} The Subaru eventually turned onto a dirt road and although the officers went up the road as well, they did not see the Subaru. According to the video, the pursuit terminated after approximately nine minutes and twenty seconds.

{¶7} Officer Newman testified that it is not department policy to pursue a chase at all costs due to the risk of physical injury to officers and other individuals. It is the policy

of the Dennison Police Department to pursue car chases when the vehicle in question is the subject of a felony investigation. Officer Newman admitted that this chase ensued due to loud exhaust and there was no suspicion that it was linked to any felony investigation.

{¶8} On cross-examination, Officer Newman admitted that the Subaru did not drive through any yards during this pursuit. No accidents occurred. No vehicles on the roadway had to drive erratically to avoid a collision with the Subaru. No one was walking or standing in or near the road that needed to dive out of the way. No animals were injured. No fences, mailboxes, or other structures were damaged.

{¶9} Neither Officer Newman nor Officer Barbie saw the driver of the Subaru on March 22, 2015. Officer Newman did obtain the license plate number of the Subaru and looked it up to obtain information about the vehicle's owner. The vehicle was registered to B.W. (T. at 115). After speaking to B.W., Officer Newman learned that B.W.'s ex-wife, P.W. possessed the vehicle. (T. at 115-116).

{¶10} Another Dennison police officer saw the Subaru on March 26 and March 27, 2015 and then made contact with P.W. The officer's conversation with P.W. led him to believe Bailey, P.W.'s boyfriend, may have been the driver in the alleged chase. (1T. at 117). Officer Newman testified that he ultimately located Bailey on April 7, 2015, at an apartment in Uhrichsville, Ohio. (1T. at 118 -119). Officer Newman transported Bailey to the Dennison Police Department where Bailey had a conversation with Chief (then, Sergeant) Todd Beeman, also of the Dennison Police Department. (1T. at 119-120). Officer Newman testified that he witnessed Bailey signing a *Miranda* rights form and writing a statement that read, "I was nervous so I fled from Dennison." (1T. at 121; State's Exhibit B). Officer Newman further testified that

based on Bailey's LEADS printout, he knew Bailey was under a license suspension on March 22, 2015.

{¶11} Chief Todd Beeman testified that he was at the Dennison Police Department on April 7, 2015, when Officer Newman brought Bailey in for questioning. (T. at 146-147). Chief Beeman explained to Bailey that he was going to talk to Bailey about the fleeing and eluding incident involving a green Subaru on March 22, 2015. (1T. at 148). He testified that Bailey told him that he was nervous, so he left Denison. (1T. at 149). Bailey also allegedly wrote a statement to that effect. (1T. at 148-149). The statement did not contain the date of the alleged incident. (1T. at 151).

{¶12} On April 20, 2016, the jury found Bailey guilty of the charge in the indictment. The jury made the additional finding that Bailey's operation of the motor vehicle did cause substantial risk of serious physical harm to persons or property, which enhanced the degree of charge to a felony of the third degree.

{¶13} Sentencing was deferred pending the completion of a presentence investigation report. At a sentencing hearing on June 1, 2016, the Court sentenced Bailey to serve thirty-six (36) months in prison.

I.

{¶14} In his sole assignment of error, Bailey argues that there was insufficient evidence that his operation of a motor vehicle caused a substantial risk of physical injury. Bailey further contends that the jury's finding that his operation of a motor vehicle caused a substantial risk of physical harm is against the manifest weight of the evidence.

{¶15} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶16} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶17} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶18} R.C. 2921.331(B) provides, "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop." The statute further provides,

(5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

(i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property.

(ii) The operation of the motor vehicle by the offender caused a substantial risk of serious physical harm to persons or property.

{¶19} "Substantial risk" means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist. R.C. 2901.01(A)(8).

{¶20} Under R.C. 2901.01(A)(6), "serious physical harm to property" means any physical harm to property that does either of the following:

(a) Results in substantial loss to the value of the property or requires a substantial amount of time, effort, or money to repair or replace;

(b) Temporarily prevents the use or enjoyment of the property or substantially interferes with its use or enjoyment for an extended period of time.

{¶21} Under R.C. 2901.01(A)(5), "serious physical harm to persons" means:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶22} Ample evidence exists from which a jury could find that Bailey's driving created a strong possibility of serious physical harm. When viewed in a light most favorable to the prosecution, the evidence adduced at trial revealed that this pursuit began in the Village of Dennison, a residential area. Bailey ran through a stop sign in this area travelling approximately fifteen miles over the posted speed limit. While still in the residential area, Bailey passed a car on the left, leaving his lane of travel, on a turn. After Bailey left the residential area and was travelling on the state route, he passed an oncoming car travelling above the posted speed limit of 55 miles per hour. At this point in the pursuit, Officer Newman explained why he felt unsafe.

Q:    Okay, Now, at this point, we're about three-fifty into the stop, the chase. At this point do you recall, I mean did you, you just maneuvered a right turn right there. Did you recall whether, you felt unsafe at this point in terms of the chase?

A:    After going around this turn, I started to feel unsafe.

Q:    Okay. Tell us about that.

A:    Well I know the portion of the road right there, there's been a lot of accidents out that way in the past and as we continued gaining speed I started to feel uneasy.

(1T. at 111). Officer Newman estimated his own speed at that point to be 70 miles per hour and stated Bailey was pulling away from him. (1T. at 111). Officer Newman then

momentarily slowed his speed and quit trying to keep close behind Bailey deciding that "the risk of physical injury to not only the officers, but surrounding individuals, driver of the vehicle, oncoming traffic" was too great.  (1T. at 112).  Officer Newman kept Bailey's taillights "in and out of sight at this point."  (1T. at 113) Officer Newman stated that over seven and a half minutes into the pursuit Bailey came upon on a vehicle travelling in the same lane with its hazard lights on.  (1T. at 113) Officer Newman witnessed Bailey pass what is viewed to be a box truck on the left and then turn onto a dirt road.  (1T. at 113). The pursuit ended on the road when Officer Newman lost sight of Bailey (1T. at 113).

{¶23}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Bailey, while fleeing and eluding a police officer, caused a substantial risk of serious physical harm to persons or property.

{¶24}  We hold, therefore, that the state met its burden of production regarding fleeing and eluding a police officer by causing a substantial risk of serious physical harm to persons or property and, accordingly, there was sufficient evidence to support Bailey's convictions.

{¶25}  Even if we were only to consider the "substantial risk" that Bailey posed to himself, Ohio courts have held that a substantial risk to one's self is sufficient for a conviction under R.C. 2921.331(B) as a felony of the third degree.  *See State v. Hall*, 8th Dist. No. 92625, 2009–Ohio–5695 (finding that sufficient evidence of substantial risk of physical harm existed where offender ran three to four stoplights, "nearly" collided with a parked car, and where offender jumped from the vehicle while it was still moving, almost running over himself); *see also, State v. Moore*, 8th Dist. No. 61673, 1993 WL 19604

(Jan. 28, 1993)(finding that offender put himself and passenger in danger of serious physical harm by refusing to submit to officer's order); *State v. Payne*, 3rd Dist. No. 5–04–21, 2004–Ohio–6487 (determining that offender who ignored ten stop signs and exceeded speeds of one hundred miles per hour and wrecked his car, causing his vehicle significant damage, had placed himself and others at substantial risk of serious harm).

**{¶26}** Moreover, the mere fact that Bailey did not cause an actual collision with another vehicle or serious harm is irrelevant. Here, he was convicted under R.C. 2921.331(C)(5)(a)(ii), which deals with a "substantial risk." Because Bailey was fortunate enough not to actually cause harm is of no consequence. It is only the strong possibility that harm could occur that creates culpability under R.C. 2921.331(C)(3). *State v. Semenchuk*, 122 Ohio App.3d 30, 701 N.E.2d 19(8th Dist. 1997); *Accord, State v. Garrard,* 170 Ohio App.3d 487, 2007-Ohio-1244, ¶45(10th Dist.); *State v. Harrison,* 10th Dist. Franklin No. 07AP-98, 2007-Ohio-5099, ¶19; *State v. Love,* 9th Dist. Summit No. 21654, 2004-Ohio-1422

**{¶27}** Based on the circumstances described above, the jury could reasonably conclude that a substantial risk of serious physical harm to persons or property existed as a result of Bailey's reckless driving.

**{¶28}** As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest

weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967).

{¶29} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶30} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967),

paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶31} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

{¶32} In the case at bar, the jury heard the witnesses, viewed the evidence and heard Bailey's arguments and explanations about the lack of evidence.

**{¶33}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Bailey of the charge.

**{¶34}** Based upon the foregoing and the entire record in this matter, we find Bailey's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Bailey and his arguments. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Bailey's guilt.

**{¶35}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Bailey was convicted.

**{¶36}** Bailey's sole assignment of error is overruled.

{¶37} The judgment of the Tuscarawas County Court of Common Pleas, Tuscarawas County, Ohio is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur